All right, please be seated. We'll take up Doe v. Doe, which is Ms. Griske, is that right? Griske, Your Honor. Griske. All right, we'll be glad to hear from you. Thank you. May it please the Court, I'm Kara Griske, arguing on behalf of Appellant John Doe. With all respect for the able District Judge, there was an abuse of discretion in denying John Doe's pseudonym motion. A close look at the District Court's order powerfully suggests that a balancing of the James factors did not occur, and that the District Court applied general rules and acted on erroneous... Let me ask you a preliminary question. Sure. Because it's just curious with me, and maybe you can just help to clear that from me at the beginning. Yes, Your Honor. This is a rather unusual case, of course. It's not the victim, or so-called victim, who's asking for this anonymity. It is the plaintiff in a defamation suit. And I would assume part of the damages of that would be, you know, you defame someone, it hurts the reputation. People know about it. I would think if he wins this thing, he's going to want to put his name out there. And it would seem to me, even now, he would want it. It would be a mitigating thing to the defamation aspect of it, that people would know that he doesn't think it happened, and so much he sued on it. This is who he is. It was... I don't get why he wants to be anonymous in terms of the remedy that he seeks and the kind of action that he's bringing. I understand the victims. I understand, you know, non-parties and that sort of stuff. But why does someone who says, you defamed me, want to not tell anyone that they defamed him? Or no one know that that's the person who's saying you defamed me? Thank you for that question. Oh, sorry. The victim is using her name freely. And part of the defamation is that you have publicized it. You put it out to someone. Why wouldn't you want those folks to know I'm bringing this action against them? Thank you for your questions. The answer to that is that the defamation that occurred, occurred within a smaller community, that being Tulane University, the administrators, the confidential Title IX proceedings, and to the extent that the allegations were made public on social media, Mr. Doe was not specifically named on those posts. So even though the defamation is something that occurred publicly, in some part, because Jane Doe did speak with her friends and fellow students on campus, it's not something that's been widely disseminated as it would be in a case involving a public figure. So if he won the defamation suit, wouldn't he be going out there telling his name and that these were false allegations against him? Or would he just always leave it at John Doe? How could he clear his name if he doesn't say who he is? It seems to me he wants to have it both ways. He wants to hedge his bets in case he loses. I respectfully disagree with that position. He could clear his name by going back to the very same people. And saying who he was, but he doesn't want to say who he is in this lawsuit. No, Your Honor. The people to whom Jane Doe communicated the allegations are people that know John Doe's identity. They're students at Tulane University. The Title IX administrators know John Doe's identity. He subsequently, as you may be aware from my supplemental filing, has filed an action to clear his record there. So to the extent that people are aware of his identity, which would not be the public at large, he can go back and say I won this judgment to the people that are aware of who he is. He has no interest. Is this case any different from any other defamation case? Because the principle is in anonymity cases is that the ability to proceed anonymously is a rare event. And our cases say it requires extraordinary circumstances. So what are the extraordinary circumstances that this makes this different from any other defamation case? I think the fact that this case is intertwined with a Title IX disciplinary proceeding and the fact that the majority of the facts relevant to the investigation and such were maintained confidentially at Tulane. There is also Sue Rowe, who was another Title IX complainant, who has not been identified. And there is a risk that she could be if John Doe's identity is disclosed. Do you have any case law that supports your assertion that because this is intertwined with a Title IX case, that makes it exceptional? Yes, Your Honor. There's an Eastern District of Virginia case, Doe versus Rowe. It was also part of the case docket, Doe versus Marymount University, where the court allowed the plaintiff to proceed by pseudonym against his accuser and the university. She was also identified. And the university. Yes. That's the critical piece here, since you're not suing the university in this lawsuit. You're suing them in a separate lawsuit, and that's different. Yes, Your Honor. But the allegations in that, in Doe versus Rowe, it's 295F sub 3664, were the same as the allegations here. There was a defamation claim alleged against the accuser relating to statements that she made to friends and fellow students on campus and to the Marymount University administrators. So I think that's where the similarity lies and why this is not a garden variety defamation case. Well, in the world in which we now live, we have more and more of these cases where the accused in a university setting brings the claim against the university and the people involved there. And then I guess this is sort of an offshoot of that, where the accused then brings claims against the accuser at the university setting. What would make this case any different from all the rest of them? I mean, it almost seems like to me if we ruled in your favor here, there'd be no reason not to just do it in every one of these types of cases. Well, I think that's where the James balancing test comes in, and it's a case-specific analysis. There should be no blanket application of any general rule when assessing pseudonymity in a particular case. The district court cited all the James factors and went through and described how the court looked at those. What else do you say it was supposed to do? Well, Your Honor, I think that here in the balancing, let me back up, I do not believe that a full balancing of the James factors occurred in this case, and that's why we're before you today. When you say a full balancing, what is that? So, for instance, with respect to the fourth James factor, whether or not the case is against a private party versus a government entity, the court found that the fourth James factor weighed significantly against pseudonymity, but it appears that that was the application of a general rule against pseudonym protection in cases against private parties, because there are an overwhelming number of cases in this circuit in which that factor has weighed against pseudonymity, but the court allowed the plaintiff to proceed under pseudonym. In those cases, they looked at the first factor of whether or not the case involved highly sensitive and personal details that would warrant protection, and here the district court did find that John Doe was trying to protect matters of the utmost privacy, yet found that because it's a case against a private party, he wasn't entitled to pseudonym protection. So that was the first issue, was the giving significant weight to the fourth James factor. Also, with respect to the second James factor, the district court seemed to rely on an erroneous factual premise that there were no aggravating factors. Specifically, he said that the allegations against John Doe were not- Came up because the district court there basically said, Well, I don't have to do anything. Nobody gets to proceed anonymously in my court, or worse than that effect. So an earlier panel came up with these factors, but I don't think anybody's ever tried to describe other than looking at them what the district court's supposed to do with them. I don't disagree, Your Honor, that there is discretion there, but the James opinion makes clear that pseudonym cases should not be decided by relying on general propositions, such as pseudonym protection should be denied in cases involving private parties. That was specifically in the James opinion. I believe in footnote three of that opinion, that the district court should not rely on erroneous or flawed factual or legal premises. And here, with respect to the second James factor, there needs to be a risk of retaliatory physical or mental harm. The district court acknowledged that merely being accused of sexual assault can invite harassment and ridicule, but then went on to find two things. One, that John Doe had only alleged a general fear of retaliation, where the complaint actually alleged that he had suffered threats to his safety as well as mental anguish and had to leave school because his friends had called up his parents and said he's not safe here. So the court did not look at those allegations. And two, the district court found that the allegations were not widely circulated. Well, they were widely circulated within his community, and that was alleged in the complaint as well. What about paragraph, this is a different type of question, but in paragraph 12 of the complaint, there are so many uniquely identifying factors about John Doe that with some effort, maybe not much effort, you could figure out who this is. Your Honor, it's not in the record, but I did attempt to do that via Google and was unable to do so. Somebody much younger than me probably could, college students, his peers probably could figure this out. I'm not sure, Your Honor, that that would actually happen, that just using Google and typing in a few of the facts that are alleged in the complaint that he could be identified by name. Again, I was not able to do that. There are cases, for instance, Doe versus Purdue University, 321 FRD 339, where the pseudonym motion was granted even though the complaint contained detailed allegations about the plaintiff's ROTC involvement. And Grinnell College was another case where there were some details in the complaint. That's 2017 Westlaw 11646145. The court found there was no disclosure of the plaintiff's identity through his case and allowed the pseudonym protection to go forward. So there are, there is precedent for allowing a pseudonym to be put in place even though there were some details alleged in the complaint. So on the second factor, you seem to have made an argument with your client that there was some duty to protect these non-parties, the third parties, the Jane Does and that sort of thing. And how did the trial judge respond to that? How was that taken care of? He, the district judge said that he did not have to take that into account when considering whether or not pseudonym protection should be afforded to John Doe. Do you have any case law that says he did? Yes. Yes, so in James itself, this court said that consideration of harm to non-parties is a critical part of determining whether the requesting party can proceed by pseudonym. Also, Doe v. Virginia Polytechnic Institute, 2022 Westlaw 972629. Let's assume you prevailed on that one point right there and we sent it back. All the other things you've indicated, the trial judge did consider it, so then you're dealing with abuse of discretion. All he would need to do is go back and just say, I considered it and set forth a few facts to say I considered it and I weigh it in his favor, then where are we then? How difficult would it be for the trial judge to, I guess, so-called fix such a, if it was an error? I'm almost out of time. Thank you. In terms of reconsideration on that one point, I think that it's apparent that even though Jane Doe has identified herself in this case, there is another Title IX complainant that has not, and there's potential for her to be identified. What about a limited order that says you can't identify Jane Doe? She remains Jane Doe, but he does not get it. Can you do that? Can the trial judge do that? Because this is dealing with non-third parties. So the trial judge says, okay, non-third parties will be anonymous unless there's some reason to make them non-anonymous. But you don't get the benefit of it. Well, yes, Your Honor. Can you do that? Yes, Your Honor. The judge can fashion that type of relief. The judge has discretion to manage the case as he sees fit. And in the James case, what happened was the plaintiffs there got an ex parte order to proceed by pseudonym. The judge then entered an order to govern discovery where the defendant learned the identities of the plaintiff. And then, as we know, the ultimate opinion, the Fourth Circuit's opinion, deals with disclosure of identities at trial. So any number of mechanisms could be put in place, even for John Doe, in the discovery phase of the action. He is not represented that he will not disclose any of the non-parties to Jane Doe. He is not represented that he wouldn't let her use his name in the discovery process to impede that in any way. So there are remedies or orders that could be in place to manage the case at various stages, whether with respect to John Doe or non-parties. All right. Thank you very much. Thank you. Ms. Dagger, is that right? Yes, Your Honor. Thank you, Your Honor. Good morning. I'm Kelly Margolis Dagger, and with my partner, Jamie Weiss, we represent the appellee, Lily Chin, who is identified as Jane Doe in the complaint in this action. Ms. Chin asks this court to affirm the district court's thoughtful and thorough order, exercising its discretion to deny Mr. Doe's motion to proceed by pseudonym in this defamation case. Let me jump right to one of the questions that Judge Winn just asked my counsel on the other side in this case about the second James factor. This court did recognize in James that one of the factors a district court is to take into account in determining whether to allow a party to proceed by pseudonym is the risk of retaliatory mental and physical harm to the party seeking to proceed by pseudonym or to innocent non-parties. What the district court did say in its order, it did acknowledge an argument that Mr. Doe made to the district court, and it said it recognized Mr. Doe's concerns about Jane Doe. Jane Doe's a party. She's the defendant, Lily Chin, and Sue Roe. Sue Roe is a non-party. Sue Roe is the other woman Mr. Doe is alleged to have sexually assaulted. She's not a party to this case, and she's not identified in the complaint. There wasn't a question presented to the district court about the disclosure of Sue Roe's name. Again, she's not a party. Does the district court have to consider that, or can it simply say, I'm not going to be bothered with non-parties who are not named in anything here? Don't we have case law that says that he at least needs to consider that particular impact? Absolutely, Your Honor. And, in fact, what the James case says, what this court said in the James case, the way that it's phrased suggests that the potential for retaliatory harm to innocent non-parties is even more critical to the analysis than just the potential for harm to a party. And so here's where I think the distinction is between this case and the James case, and I'll try to explain what I think the district court did here. What Mr. Doe argued to the- My question here is- Yes, Your Honor. John Doe's anonymity. He didn't ask for Susan Roe's anonymity. That's correct, Your Honor. And so the question, I think, and the way the district court framed it, which I think is right, is whether there is a risk from the disclosure of John Doe's identity. If John Doe is required to reveal his real name as the plaintiff in this lawsuit, will that create a risk to innocent non-parties? Like Sue Roe. Exactly. And so- The question I had on it was, I mean, that's true. I think that's right, and he's just going correctly. It is, but it's the risk to the others. Is the trial judge's response as though I don't have to consider it? But that's not true. He did have to consider it, at least the impact that it potentially had. There's nothing here that indicates he actually did. It's like, you know, not going to consider it. I agree, Your Honor, that the district court did have to consider, as a factor, the risk of retaliatory harm to innocent non-parties. However, what Mr. Doe argued in the district court was not, he did not argue to the district court that there was a risk if he used his name to innocent non-parties. He argued in the district court that there would be a risk of unwanted scrutiny and harassment if the names of, and this is a quote, the female accusers were revealed. So what he argued to the district court and what the district court is responding to, I think, in its order there, is the argument that there would be a risk to Jane Doe and to Sue Roe if their names were revealed. What he didn't argue and what he didn't offer anything to show is that there would be some risk to them if his name is revealed. And I think the James case provides a useful parallel here because in the James case, the plaintiffs seeking to use pseudonyms. So he didn't make the link in the argument below that if his name is revealed, that would necessarily reveal the names of both his accusers? That's correct, Your Honor. That's not what he argued. And that's why, that puts the district court's comment in context, I think. In the James case, the plaintiffs seeking to use pseudonyms were parents and the case involved harm to their minor children. The harm was that their minor children might find out through publicity about the litigation that their biological father was the defendant. In that type of case where a parent is seeking to use a pseudonym and the case involves the familial relation, identifying the parent will necessarily create a risk that the child will be identified. Who protects the interests of these non-parties like Sue Roe and others out there? And I can see where this can go. And I'm just wondering why even then could the trial judge or should he consider it in a maybe limited extent? John Doe seeks his anemone on this situation, but he doesn't really have a duty to try to get an anemone for the rest of them out there, including non-parties. But the case law seems to indicate that the trial judge has a duty to consider the impact that it would have on them. And it seems like that would be an independent duty because it could impact a lot of innocent people out there in a suit of this sort that the trial judge should at least consider. But here, there's no consideration. It's like, you know, I'm not even going to think about it. And that seems across the line to me. Now, the fix on it, as indicated, could be very simple. I mean, it's just a matter of sending it back and I can only imagine what the trial judge is going to do. He'll go back and make a sense as I consider it and I look at these factors here and that and I weigh it and this is the way I come out, which is probably going to be the same way. I'm not predicting how he's going to do it, but it just seems to me that's what's going to happen. But isn't that duty at least there that you can't just say, I'm not going to consider them? Or worse to that effect? Well, again, Your Honor, I do think that one of the James factors and not I think it is one of the James factors is the risk to innocent non-parties. The plaintiff in this case had the burden to present to the court some reason that there were exceptional circumstances to overcome what is ultimately is a public right of access. The plaintiff, why does he care? I mean, other than that, when you're talking about non-parties, these are people not in court. Innocent people, it seems to me there's something the court ought to do at least concern itself. I thought about it and I'm looking at these non-parties and I don't think it's going to affect them because da, da, da, at least that. Not just you didn't say a word about these four or five other little innocent young people out here. They could be minors or whomever. I guess minors would be protected a different way. You didn't say a word about that, but I'm going to look at it and think how it will affect them. At least even then there might be some type of order where he might say, I'm not giving it to you, but I'm going to give it to these people here. You may not name these people in this action or something of that nature or proceeding. I understand, Your Honor, and I think I was sort of a little to the left of your question before. So I agree that the district court certainly has discretion, for example, in managing the discovery process and granting motions to seal or redact filings to order some kind of confidentiality for someone like Sue Roe who's not a party to this case. I don't think that the failure to discuss that in this order could be considered an abuse of discretion because the question that was presented to the court was whether John Doe can proceed by pseudonym. And the district court said expressly in its order it wasn't ruling that Sue Roe can't be identified by pseudonym. Now, to one of the points that Your Honor raised, though, I don't think there was anything necessarily preventing Mr. Doe from identifying Sue Roe by name in the complaint. And that's the public court system. One last thing, and this goes more to where we are in terms of revealing his name, and the thought process is by revealing his name you reveal innocent non-parties. And my only question is, at least it seems, the case law says the judge should at least consider the impact of that. You can't just brush it aside and say, well, I'm not going to look at that and move on. That's the only, it may have been two or three sentences or something, but I think that he's required at least that point to consider, if he knows there are potential innocent non-parties, to at least consider the impact in making the decision of whether to grant an entity. In making a decision on Mr. Doe's motion to proceed by pseudonym, I agree, whether it is an independent obligation, which there is an independent obligation on the district judge, of course, to weigh whatever the private interest is against the public interest in openness. The case law doesn't speak that way about this, the interests of non-parties. I don't think that there would have been a reason in the first place that Mr. Doe could not have named the other parties, or in this case we're talking about a non-party, Sue Roe, by her real name. He could have, but it is the case that James says that the court is to consider the risk to innocent non-parties. I would say here there's no reason to think that there would be a risk. If John Doe is required to use his real name, that that will in turn result in the identification of Sue Roe, and that's what makes this case different from James. Revealing the name of the parent quite easily could result in the identification of the child, even if the child is identified by a pseudonym. There's no such relationship between John Doe and Sue Roe that would cause that type of identification. The only people who could discern who Sue Roe is, if John Doe is required to use his name, are the people who already know that Sue Roe reported that John Doe sexually assaulted her. Those are the only people, and they already know. All three of your honors, and in particular Judge Thacker, asked a question about clearing John Doe's name and him clearing his name and why he doesn't want to use his name in this lawsuit to come forward and say these allegations of sexual assault are false. I don't know the answer to that. I don't know why he made that decision, but Judge Thacker asked this question about if he wins this case, if Mr. Doe prevails in this case and he secures a verdict in his favor that he was defamed when this sexual assault was reported, won't he want to tell people that? And Mr. Doe's response to that is that he can tell the people who already know about this. So he can tell his community, administrators, students, friends at Tulane, whom he assumes already know about these allegations, by the way, I took this to trial and a jury found in my favor. But even in doing just that, what Mr. Doe would be doing is revealing to those people, I was the plaintiff. I, Mr. Real Name, was the plaintiff, John Doe, in this lawsuit. I'm showing you the verdict in my favor from this lawsuit. And I know the caption says John Doe, but it's me. And so the answer to that is yes, he will reveal. If he wins this lawsuit, he will reveal his real name. And the district court picked up on this and it said that's fundamentally unfair. It's fundamentally unfair to come in to what is otherwise an open court system and to hide behind that shield of anonymity and then selectively disclose the result if you like the result. That does not promote the truth-seeking function of our justice system and it's not consistent with open courts. There was a question also about whether there was any case law to support Mr. Doe's argument that he ought to be able to proceed by pseudonym in this defamation case. And counsel made reference to this district court case out of the Eastern District of Virginia involving Marymount. It's one of many Doe v. Roe cases that are cited in the briefs. Mr. Doe did cite that case in his reply brief to this court. I would note for the court's consideration in terms of the district court's exercise of its discretion, the district court found that Mr. Doe had not cited a single case to the district court in which a plaintiff in a defamation case suing the alleged victim of sexual assault was allowed to proceed by pseudonym. And Mr. Doe told this court in his opening brief, that's right, we did not cite such a case. There is a case cited in the reply brief and that's the Marymount case. I think the disposition that's cited in the reply brief involves a motion to dismiss and not an order analyzing whether one of the parties can proceed by pseudonym. I did go to the docket and I pulled the district court's order in that case. I think it's Judge Ellis out of the Eastern District of Virginia. And I would note that it was unopposed. The motion to use a pseudonym in that case was unopposed. The case was brought by apparently a student against the university and another student and did involve a defamation claim. There was no balancing in the district court's order of the James factors. So we've talked about the district court's exercise. And all of those cases cited, including the one in the Eastern District of Virginia, are different from this case because in those, the university was also sued. That's correct, Your Honor. That's correct, Judge Thacker. And the Marymount case is now the only case that's been cited that does at least also involve the alleged victim of the sexual assault as a defendant with a defamation claim against that alleged victim. So did you say that's a consent order? It was unopposed. That's right. So Judge Ellis entered that order noting that it was unopposed. There was no balancing of the James factors. He did cite the James case, didn't mention what the factors are and what the district court also did not do in that case is it did not do what this court said it has to do in Doe v. Public Citizen. After balancing the James factors, it did not return to its independent obligation to balance the private interest against the interests of the public in openness. And so that didn't occur. That didn't occur in that case. And I think that that lacks persuasiveness, the fact that that order was entered unopposed in the Marymount case, which again is also cited as a Doe v. Roe case in the briefing. Your Honor, there was a question from the panel about the – and I'm sorry, I misspoke there. This isn't a question from the panel. There was a comment or an argument made by Mr. Doe's counsel about retaliation and the risk of retaliation in this case, and that's the second James factor. The district court, as with all the other James factors, thoroughly considered the second James factor, including the risk of retaliation. Mr. Doe has argued to this court that there were erroneous fact findings, fact findings that were clear error that underlie the district court's determination that the second factor, which is the retaliation factor, was neutral. There were not. There is no clear error. The district court considered the argument – and again, Mr. Doe had the burden here to show extraordinary circumstances. The argument that he made to the district court was that there was a risk of retaliation because – and this is from his brief to the district court – it would be harmful to his physical and mental health to live with the public reputation of having sexually assaulted someone. And that was the risk of retaliation to him. The district court acknowledged that. It didn't ignore that. It didn't disagree with that. It didn't decide by general rule. The district court acknowledged that allegations of sexual misconduct could be embarrassing, could lead to harassment and ridicule. But the district court considered that along with the lack of any other evidence of a risk of retaliation to Mr. Doe. Now, Mr. Doe said to this court that he had already experienced retaliation and that there were specific threats to safety. And again, I go back to his brief to the district court. Under the retaliation factor in his district court brief, he didn't mention anything about his safety. What Mr. Doe does allege in his complaint is that before he learned that Ms. Chen had reported to Tulane University's Title IX office that he sexually assaulted her, before that happened, Ms. Chen told people that he sexually assaulted her and that he experienced retaliation, meaning some of his friends stopped talking to him, he was kicked out of a group chat, and two of his friends told his parents to come and take him home. It wasn't safe for him on campus. None of those facts suggest that Mr. Doe is at a risk of retaliation if he now comes forward and says to the public, she defamed me when she made those allegations. The retaliation that he's talking about in his complaint is what he experienced when his friends learned of Ms. Chen's report that he sexually assaulted her. We would also just touch on the fourth factor, and I think it's significant that on appeal, Mr. Doe does not dispute that the fourth factor, which is whether this case is against the government or a private party, weighs against pseudonym protection. He quibbles with it weighing significantly against pseudonym protection. For all the reasons that we've discussed and the distinctions between a defamation case, a defamation is inherently a public tort. Reputational damages are inherently public. There are good reasons for the court to conclude that the fact that this case involves only private parties, and again, unlike that Marymount case, Judge Thacker does not involve the university as a defendant, but only a private individual as a defendant. There are good reasons for the court and its discretion to conclude that that fourth factor weighed significantly against the motion. For all those reasons, we would ask this court to affirm the district court's decision to deny the motion to proceed by pseudonym. Thank you, Your Honors. Thank you very much. Counsel, you have some rebuttal time. Thank you, Your Honors. I just wanted to respond to my colleague on the other side's argument concerning the fact that John Doe did not, in his motion papers, link a risk of retaliatory harm to Jane Doe or Sue Roe if he were identified. At JA48, that's the moving brief, the heading on that page is Identification of John Doe Poses Potential Retaliatory Physical and Mental Harm, and then when discussing the accusers, John Doe provided a pin site to Doe v. Virginia Tech, 2022 Westlaw 972629 at Star 2, and in that case it discusses the risk to non-parties if the accused is identified or the plaintiff is identified in a pseudonym case. Also, regarding the district judge's discussion of fundamental unfairness to Jane Doe, if she were named in an order or judgment while he could shield himself with anonymity, John Doe, in his motion, did not seek to identify Jane Doe, so those facts were not before the court at the time he issued the decision. He actually sought to protect Jane Doe, Sue Roe, and himself by pseudonym, and even so, as I discussed earlier, there are ways to manage a case such that that type of result can be avoided. In the district court's opinion, there was citation to a New Jersey appellate case where the concern was whether both parties would be identified should a judgment be entered in the case. It wasn't a particular concern about the defendant being identified versus the plaintiff. And in terms of retaliation, the second James factor, the district court did review the complaint. That was apparent from the court's opinion, and the allegations regarding John Doe's risk of physical or emotional retaliatory harm are quite extensive in the complaint. It wasn't just a few people that, you know, knew about it. The allegations were widespread in the campus community, and if someone's mother has to fly to their college campus to retrieve them because they're not safe, I think that shows that he was at risk of harm at that time. The last item I wanted to mention was counsel's submission yesterday of a Tenth Circuit case, Doe versus Roe. That case is readily distinguishable, especially with respect to the second James factor, because the Tenth Circuit specifically requires a risk of physical harm as part of the pseudonym test. The facts were also very different. There was an agreed-upon protective order there. There was no Title IX proceeding resulting in expulsion. And also in the Tenth Circuit, there's a local rule that sets forth a multi-part test for restricting public access that was at issue in that case. The last thing I would like to say is that there was reference in the Tenth Circuit case about alleged sexual assault victims speaking out. There is case law that sometimes references the Me Too movement. I think that bringing policy matters into the pseudonym test, which is a case-specific test, treads dangerously close to assessing the merits of the accused or the accuser's claim when it's used to deny protection as a matter of policy. And thank you for your time today, Your Honors.
judges: G. Steven Agee, James Andrew Wynn, Stephanie D. Thacker